**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

ANTHONY LEWIS )
      Plaintiff, ) 3:10-cv-00497-ECR-VPC
   v. )
 ) **REPORT AND RECOMMENDATION**
 ) **OF U.S. MAGISTRATE JUDGE**
A. STANKUS, *et al.*, )
 ) Mary 29, 2012
      Defendants. )

      This Report and Recommendation is made to the Honorable Edward C. Reed, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#54).[1] Plaintiff opposed (#59) and defendants replied (#64).[2] The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#54) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

      Plaintiff Anthony Lewis ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#15). However, the events giving rise to the instant complaint occurred while plaintiff was incarcerated at Northern Nevada Correctional Center ("NNCC"). *Id*. Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials employed excessive force against him in violation of the Eighth Amendment and retaliated against him in violation of the First Amendment. *Id*.

---

   [1] Refers to the court's docket number. Defendants also filed exhibits *in camera* and under seal (#56 (*sealed*)).

   [2] Plaintiff filed an additional motion styled "Objection to defendants' reply to opposition to motion for summary judgment" (#66). In this motion, plaintiff continues to oppose defendants' motion for summary judgment. *Id*. Federal Rule of Civil Procedure 54 outlines timing for summary judgment motions, responses, and replies. Plaintiff did not request the court's leave to file an additional opposition following completion of the briefing on this matter; therefore, the court strikes the filing (#66). The court admonishes plaintiff to refrain from filing excessive or duplicative briefing outside of the scope of permissible court filings noted in the Federal Rules of Civil Procedure.

The court screened plaintiff's complaint in accordance with 28 U.S.C. § 1915A and plaintiff's remaining claims include Eighth Amendment excessive force claims and First Amendment retaliation claims against NNCC Correctional Officer Paul Lessard, NNCC Correctional Officer Adam Luis, and NNCC Lieutenant Adolph Stankus ("defendants") (#14).

The court relates the pertinent facts contained in plaintiff's complaint (#15) and defendants' motion for summary judgment (#54). Plaintiff alleges the following: on June 18, 2010, defendant Lessard delivered a breakfast tray to plaintiff's cell (#15, p. 3). Plaintiff told defendant Luis that the sugar packet for his coffee was empty. *Id*. Plaintiff claims that defendant Luis took the packet and threw it on the floor. *Id*. Defendant Stankus approached and plaintiff told him what happened. *Id*. Defendant Luis then kicked the food slot closed on plaintiff's left hand, and defendants Luis and Stankus "rushed the food slot" and closed it on plaintiff's hand. *Id*. Plaintiff further alleges that defendant Stankus beat plaintiff's hand with his flashlight and that defendant Lessard grabbed plaintiff's fingers and bent them backwards, trying to break them. *Id*.

Defendants submit three affidavits and allege the following: defendant Luis told plaintiff that he would bring him sugar after he served the other inmates (#54, Ex. B, p. 2). Defendant Luis states that plaintiff put his left hand in the food slot and defendant ordered plaintiff to remove his hand "no less than three times." *Id*. Plaintiff refused to move his hand. *Id*. Defendant Luis requested assistance and defendant Stankus arrived at plaintiff's cell. *Id*. at Ex. A, p. 3. Defendant Stankus states that plaintiff's left arm was sticking out of the food slot and that he was swinging it back and forth. *Id*. Defendant Stankus ordered plaintiff to pull his arm inside his cell to allow staff to secure the food slot. *Id*. Plaintiff refused and became more agitated. *Id*. Defendant Stankus ordered plaintiff three more times to pull his arm inside, but plaintiff refused. *Id*.; Ex. B, p. 2. Defendant Stankus attempted to secure the food slot, grabbed it with his left, and tried to push plaintiff's arm inside with his right hand. *Id*. at Ex. A, p. 3; Ex. B, p. 3. Other inmates became agitated as a result of not having received their trays. *Id*. Plaintiff grabbed defendant Stankus's left wrist with his left hand with a "surprisingly firm grip." *Id*. Defendant Stankus struck plaintiff's left wrist once with

2

a flashlight in an effort to release plaintiff's grip.³ *Id*. at Ex. A, p. 4; Ex. B, p. 3. Plaintiff released his grip on defendant Skankus's wrist. *Id*. Defendant Stankus again ordered plaintiff to pull his arm inside his cell. *Id*. Plaintiff then attempted to grab the flashlight out of defendant Stankus's hand. *Id*. Plaintiff also attempted to hit defendant Stankus with a closed fist. *Id.* at Ex. B, p. 3.

Defendant Stankus applied two quick strikes to plaintiff's hand with his flashlight and ordered him to let go of the food slot. *Id*. at Ex. A, p. 4; Ex. B, p. 3. Defendant Lessard grabbed plaintiff's hand and forced plaintiff's fingers off the food slot. *Id*. at Ex. C, p. 2. Defendant Lessard pushed plaintiff's hand and arm into the cell and defendant Stankus shut the food slot, while defendant Luis secured it. *Id*. at Ex. A, p. 4; Ex. B, p. 3, Ex. C, p. 2.

After the incident, plaintiff requested the unit staff call "man down" and alleges that he had an anxiety attack (#56, Ex. E, p. 3 (*sealed*)). Medical staff examined plaintiff at his cell and took him to NNCC's Regional Medical Facility to be evaluated. *Id*. Medical staff examined plaintiff and noted that his left hand was "slightly swollen." *Id*. There was an open area on his left index finger with "minimal bleeding" and a "puncture mark on left thumb and above left finger." *Id*. An x-ray of plaintiff's hand showed no fracture and that he had a soft tissue injury. *Id*. Plaintiff did not seek follow up treatment. *Id.* at 4. NDOC transferred plaintiff to Lovelock Correction Center ("LCC") in July 2010 (#54, Ex. G, p. 2).

On June 18, 2010, plaintiff received a notice of charges for his conduct in connection with the incident outside of his cell. *Id*. at Ex. D-1. Plaintiff signed the notice of charges and subsequently attended a disciplinary hearing at which he would found guilty of disobedience and blocking and threatening staff. *Id*.

Defendants move for summary judgment on all of plaintiff's claims (#54). Defendants contend that they are entitled to judgment as a matter of law on plaintiff's excessive force claims because defendants used force "in a good faith effort to restore discipline and order." *Id*. at 11. They

---

³ The flashlight is approximately eighth inches in length, one inch at the base and is made from a lightweight alloy (#54, Ex. A, p. 4). Defendant Stankus states in his affidavit that it is lighter and smaller in size than the bulky, metal "mag lights" that were once used by correctional officers. *Id*.

3

further argue that they did not use any more force than necessary. *Id*. Defendants state that plaintiff's retaliation claim must fail because plaintiff cannot show that his First Amendment rights were chilled "as he is still actively litigating all of his federal cases." *Id*. at 13. Lastly, defendants state that are entitled to summary judgment on this claim because they were not personally involved in plaintiff's transfer to LCC. *Id*. at 14.

Plaintiff opposes and states that he "couldn't reach no further [sic] than the food slot" because he was in his wheelchair (#59, p. 2). Plaintiff claims that defendants slandered him and tried "to make [him] look bad" in their motion. *Id*. at 1. Plaintiff's opposition addresses only excessive force claims, leaving the remaining facts alleged by defendants as to his retaliation claims unchallenged. Plaintiff does not present any evidence with his opposition. Plaintiff requests the court retrieve certain medical records and to "call two witnesses, Jamain Collins and Raymond Miller." *Id*. at 2.

Defendants reply that they discussed plaintiff's disciplinary history to explain to the court their rationale as to why plaintiff's behavior posed a threat (#64, p. 3). Defendants state that plaintiff admitted to sticking his hand out of the food slot in his deposition. *Id*.[4] They maintain that evidence shows that plaintiff's behavior required the application of force and the use of force was neither malicious nor sadistic. *Id*. at 4.

The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

A.  **Discussion**

  1.  **Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual

---

[4] Defendants contend that plaintiff could reach out of the food slot because he could maneuver his wheelchair sideways (#64, pp. 3-4).

4

disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of presenting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002) (articulating the standard for authentication of evidence on a motion for summary judgment). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment

5

motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.     Analysis**

Plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment during the altercation on June 18, 2010 (#15, pp. 3-4). Defendants argue that the use of force was necessary and applied in "a good faith effort to restore discipline and order" (#54, p. 11). Defendants state that they "did not use any more force than necessary" and that any injury plaintiff incurred is *de minimus*. *Id*. at 12.

**1.     Excessive Force**

Where an inmate is claiming a violation of his Eighth Amendment right to be free from cruel and unusual punishment based on use of excessive force, the proper inquiry is whether the force resulted in the unnecessary and wanton infliction of pain or suffering. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To determine whether the force used was wanton and unnecessary "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. In making this determination, the court considers the following factors: (1) the extent of the injury suffered by the inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Moreover, there is no need for a showing of a serious injury as a result of the force, but the lack of such an inquiry is relevant to the inquiry. *Id*. at 7-9; *see also Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). The court must give deference to the prison officials when reviewing use of force and cannot substitute its own judgment for the judgment of prison officials. *Whitley*, 475 U.S. at 322. Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury. *Id.*

In three sworn affidavits, defendants explain that the force used was necessary because plaintiff failed to comply with multiple orders to move his hand and arm from the food slot (#54, Exs. A, B, C). Rather, despite direct orders, plaintiff's hand remained in the food slot

6

and he attempted to grab defendant Stankus's arm and flashlight. *Id*. Defendants also submit plaintiff's medical report of the June 18, 2010 incident (#56, Ex. E (*sealed*)). This report reveals that plaintiff did not sustain any serious injury from the incident. *Id*.

With regard to the *Hudson* factors, the medical reports do not establish a serious injury. Further, plaintiff has not provided evidence sufficient to demonstrate that he suffered a serious injury. Plaintiff alleges that defendant Stankus beat his hand, and that defendant Lessard grabbed plaintiff's fingers and bent them backwards, trying to break them (#15, p. 3). However, the medical reports show that plaintiff's left hand was "slightly swollen" and that he had a cut on his index finger which was .5 to one centimeter (#56, Ex. E, p. 3 (*sealed*)). He had "minimal bleeding" and x-rays revealed that he did not suffer a fracture and had no deformity in his hand. *Id*. Moreover, medical reports show that plaintiff did not seek further treatment related to the incident. *Id*. at 4. In light of the evidence presented to the court, plaintiff's injury appears to be *de mimumus*.

Second, defendants could have reasonably concluded that force was necessary under the conditions and the threat that plaintiff presented. Plaintiff was housed in a unit for high level custody inmates with disciplinary problems (#54, Ex. A, p. 2). Further, defendant Stankus was familiar with plaintiff because he was serving multiple sanctions in disciplinary segregation, including, but not limited to, having threatened staff, assault on staff, and propelling, all major violations of NDOC's penal code. *Id.* at 3. On June 18, 2010, plaintiff admittedly stuck his hand outside of the food slot. *Id*. at Ex. F, p. 58.[5] Plaintiff alleges that defendant Stankus "kicked the food slot close on my left hand" and beat plaintiff's hand (#15, p. 3). Plaintiff states that defendant Lessard grabbed plaintiff's fingers and bent them backwards. *Id*. Plaintiff fails to include any affidavits of alleged witness who would corroborate this testimony. On the other hand, defendants produce declarations, which note that they repeatedly ordered plaintiff to pull his arm out of the food slot (#54, Exs. A, B, C). Defendants Stankus and Luis state that plaintiff grabbed defendant

---

[5] Plaintiff states in his opposition that he could "reach no further [sic] then the food slot;" however, in his deposition he admits that he reached seven or eight inches out of the food slot (#54, Ex. F, p. 58).

7

Stankus's left wrist, attempted to grab defendant Stankus's flashlight, made a fist, and refused to cooperate. *Id*. at Ex. A, p. 3; Ex. B, p. 2. An aggressive inmate who seeks to fight with prison staff would necessitate the need for force. In light of *Whitley's* admonition that the court cannot substitute its own judgment for that of prison officials, the court concludes that there was a genuine need for use of force because plaintiff is a high custody level security prisoner and admittedly had his hand outside the food slot, despite defendants' orders to remove his hand. Plaintiff admittedly knew that the food slot is covered in order to protect staff and yet concedes that his hand was outside the food slot "about seven [or] eight inches" (#54, Ex. F, pp. 46, 58).

Third, there is a reasonable relationship between the need for force and the amount of force used. Defendants establish and plaintiff does not dispute that other inmates were in the area in their cells and thus this altercation presented a danger to the security of the institution and the safety of staff (#54, Ex. A, p. 3; Ex. B, p. 3, Ex. C, p. 2). The amount of force used included striking plaintiff's hand three times with a flashlight and forcing plaintiff's hand back into his cell. *Id*. Defendant Stankus first attempted to push plaintiff's arm inside the slot. *Id*. When plaintiff grabbed defendant's wrist, defendant Stankus applied a single strike to plaintiff's left wrist in an effort to break free from plaintiff's grip. *Id*. at Ex. A, p. 4; Ex. B, p. 3. Defendant Stankus recalls that plaintiff attempted to grab the flashlight and to hit defendant Stankus with a closed fist. *Id*. Defendant Stankus applied two quick strikes to plaintiff's hand with the flashlight and ordered plaintiff to let go. *Id*. Defendant Lessard then "pried [plaintiff's fingers] straight so that his fingers could no longer grasp the outer edge of the food slot," pushed plaintiff's arm into the cell, and secured the food slot. *Id*. at Ex. C, p. 2. This force was necessary to maintain control of plaintiff and to protect prison staff.

Fourth, because of plaintiff's custody level, refusal to move his arm from the food slot, and his attempt to grab defendant Stankus's arm and to hit defendant Stankus, defendants reasonably perceived plaintiff to be a threat. Finally, defendant Lessard states that he did not push plaintiff's fingers past the point where he could sustain possible serious injury, but only to the point of removing his hand from the food slot. *Id*. Defendant Stankus also attempted to stop the force used

by first attempting to push plaintiff's arm inside his cell. *Id.* at Ex. B, p. 3.

Furthermore, the court underscores its obligation to give deference to prison officials when reviewing use of force and not to substitute its own judgment for the judgment of prison officials. *See Beard*, 548 U.S. at 530. Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury. Based on the *Hudson* factors, the evidence does not support a reliable inference that defendants used excessive force during the incident on June 18, 2010. As the Supreme Court has noted, the prisoner must point to sufficient evidence to demonstrate that he can prevail on the merits. *Id.* Plaintiff has provided no evidence, by affidavit or otherwise, to contradict the account given in the reports and affidavits.[6] Plaintiff fails to show a reliable inference of wantonness and thus falls short of what is needed to overcome summary judgment. The court recommends that defendants' motion for summary judgment be granted as to plaintiff's claims of excessive force.

**2.     Retaliation**

Plaintiff claims that "with no warning, [he] was transferred back to [LCC], with the officials at NNCC knowing [he] has a civil case pending against a correctional officer here" (#15, p. 4). Defendants argue that they are entitled to summary judgment because plaintiff cannot show how his First Amendment rights were chilled as he is still actively litigating all of his federal cases (#54, p. 13). Further, defendants state that they were not personally involved in any alleged retaliation against plaintiff because they were not involved with plaintiff's classification and/or transfer to LCC. *Id*. at 14. Plaintiff fails to address any issues related to his retaliation claims in his opposition.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). "A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*

---

[6] Plaintiff's conclusory statements in his complaint and opposition constitute "uncorroborated and self-serving testimony" that will not prevent a court from entering summary judgment once defendants have met their burden. *See Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002).

9

*v. Procunier*, 417 U.S. 817, 822 (1974). "Because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmates exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Retaliation claims must be evaluated in light of the deference accorded to prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id.* at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

### a. Requirement of Personal Participation

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior under [§] 1983." *Taylor v. List,* 880 F. 2d 1040, 1045 (9th Cir. 1989) (citations omitted).

Defendants submit affidavits stating that they do not deal with matters involving the classification of inmates and/or the transfer of inmates to other institutions (#54, Ex. A, p. 5; Ex. B, p. 3; Ex. C, p. 3). Defendants submit that they did not have any involvement in any subsequent discipline related to the June 18, 2010 incident or plaintiff's transfer to LCC. *Id.* Plaintiff does not address his retaliation claims in his opposition to defendants' motion for summary judgment.

Defendants meet their burden of proving that no genuine issue of material fact exists with respect to their alleged involvement in plaintiff's transfer to LCC. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present evidence demonstrating "specific facts showing that there is a genuine issue for trial." *Celotex*

*Corp.*, 477 U.S. 324; Fed. R. Civ. P. 56(c).  Plaintiff has provided no evidence nor does he even allege that defendants personally participated in the alleged civil rights violations regarding plaintiff's transfer.  In fact, plaintiff fails to address his retaliation claims altogether in his opposition.[7]  As plaintiff fails to advance "specific facts showing that there exists a genuine issue for trial" on his retaliation claims – in fact, plaintiff alleges no facts regarding issues appropriate for trial – the court may only consider the facts as defendants provide them.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court recommends defendants be entitled to summary judgment as to plaintiff's retaliation claims due to their lack of personal participation in the alleged First Amendment violations.[8]

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that there are no issues of fact as to whether defendants violated plaintiff's Eight Amendment right against cruel and unusual punishment by using excessive force.  Plaintiff also fails to demonstrate any issues of material fact regarding defendants' alleged retaliation against plaintiff.  As such, defendants' motion for summary judgment should be granted (#54).

### IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#54) be **GRANTED** as to all claims.

**DATED:** May 29, 2012.



_____
**UNITED STATES MAGISTRATE JUDGE**

---

[7]  In addition to a lack of personal involvement in his transfer to another institution, plaintiff fails to offer any evidence related to the merits of his retaliation claim.  While plaintiff alleges that he was transferred to LLC in retaliation for the June 18, 2010 incident, plaintiff is currently litigating more than one federal case and, thus, he cannot show that his First Amendment rights have been chilled.  *See Rhodes,* 408 F.3d at 567-68; *see also* Case No. 3:10-cv-0083-RCJ-VPC.  Plaintiff fails to establish a genuine issue of material fact as to whether his First Amendment rights were actually chilled by the alleged retaliatory action.

[8]  Because the court finds that plaintiff has not presented any genuine issues of material fact, the court does not address qualified immunity or Eleventh Amendment issues.